CORPORATE PRINTING COMPANY, INC., Plaintiff,

v.

NEW YORK TYPOGRAPHICAL UNION NO. 6 and Walter L. Eisenberg, Defendants.

No. 84 Civ. 5178 (DNE).

United States District Court, S.D. New York.

Nov. 16, 1984.

Kaye, Scholer, Fierman, Hays & Handler, New York City, William C. Zifchak and Michael Starr, New York City, of counsel, for plaintiff.

Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, James F. Gill, Andrew Irving and Michael F. O'Toole, New York City, of counsel, for defendant New York Typographical Union No. 6.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This action was removed from the Supreme Court of the State of New York pursuant to 28 U.S.C. § 1441(a). Jurisdiction is conferred on this court by 29 U.S.C. § 185.

Plaintiff Corporate Printing Company, Inc. ("Corporate Printing") brought this action to stay an arbitration commenced by defendant New York Typographical Union No. 6 ("Union") before defendant Walter L. Eisenberg ("Eisenberg").[1] A second arbitration was commenced by Corporate Printing after this suit was filed.[2] The Union filed a motion for summary judgment on the original claim relating to the first arbitration and a motion for a preliminary injunction to stay the second arbitration. These motions were conditionally denied and a trial was commenced. The trial was

terminated when it became apparent that no material issues of fact existed. It was determined at that time that the disputes regarding both arbitrations could be decided in the context of a single motion for summary judgment. The initial motions are deemed consolidated into the single motion for summary judgment considered herein. The parties have not submitted additional papers and none are needed. The facts are adequately presented in the submissions for the two original motions and the trial.

## FACTUAL BACKGROUND

Corporate Printing was a member of an employers' association known as the Printer's League Section-Printing Industries of Metropolitan New York (the "League"). In 1975, the League, on behalf of its members, and the Union entered into a collective bargaining agreement ("1975 Agreement"). In February 1977 Corporate Printing expressly withdrew its collective bargaining authorization from the League. Corporate Printing later withdrew from the League. The withdrawal was before an agreement was entered into between the League and the Union which modified the 1975 agreement.[3] Corporate Printing did not adopt this agreement and is the only company still operating under the original 1975 Agreement.

The 1975 Agreement provides for the appointment of a "Designated Arbitrator" to resolve disputes arising under the agreement.[4] The 1975 Agreement also prescribes the procedure for the selection and removal of the Designated Arbitrator. Article 13 provides in relevant part:

> The Designated Arbitrator (and any successor to a Designated Arbitrator) shall be selected by mutual agreement of the

---

1. Defendant Walter L. Eisenberg was not a party to the removal action because he is merely a nominal defendant in this proceeding.

2. Defendants were given leave to amend their answer to include a counterclaim based on this second arbitration.

3. The plaintiff claims that the 1982 Agreement did not simply modify the 1975 Agreement but that it is an entirely new agreement. This is irrelevant when determining Corporate Print-

ing's obligations under the 1975 Agreement under which Corporate Printing is undeniably still bound.

4. The 1975 Agreement provides that a Joint Standing Committee shall be established to "expedite decisions" on questions of interpretation and enforcement of the 1975 Agreement. In the event that the Joint Standing Committee is unable to agree, the issue is to be submitted to the Designated Arbitrator.

League and the Union; failing such mutual agreement, the selection shall be made in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association except that no administrative appointment may be made pursuant to such rules. Either party, on 60 days notice to the other party, has the right to seek the selection of another Designated Arbitrator.

Defendant Eisenberg was the Designated Arbitrator under the 1975 Agreement.

The Union sought arbitration before Eisenberg of a dispute with Corporate Printing. The dispute related to contributions by Corporate Printing to the Benefit and Productivity Fund ("BAP Fund") which

5. League Option A provides:

The League may elect to notify the Union that it is challenging the cost of living and wage increase provisions of the Contract. This option may be exercised in connection with amendments to be effective October 4, 1978, or on any succeeding annual October 4 anniversary date.

Notice of the election of this option must be given in writing by the League to the Union on or before August 1 preceding the October 4 on which amendments sought would be effective. Should the Union invoke Union Option B and the League invoke League Option A, the arbitration procedures under League Option A will be followed with the Union also submitting those written statements called for in Union Option A.

The arbitration panel shall consist of three impartial members, at least two of whom shall be economists, designated by agreement of the parties. If the parties fail to agree on the three impartial members by the appropriate August 3, the impartial members shall be designated by the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules, except that no administrative appointment may be made pursuant to such Rules.

In the event of refusal to serve, death, incapacity, or resignation of any member of the panel, a successor shall be appointed immediately to fill the vacancy in the manner provided above.

In order to encourage frank and full discussion between the parties during negotiations, those conversations which occur and proposals which are made during such negotiations shall not be referred to in connection with the presentation of any issues to the panel, except as the parties agree otherwise.

The League shall submit to the arbitration panel and to the Union in writing by the appropriate August 15 a detailed written justification for the amendments which it seeks.

was established to provide for payments to employees displaced because of automation of the printing industry. Corporate Printing refused to submit to arbitration before Eisenberg and sought to dismiss Eisenberg as the Designated Arbitrator. This suit was brought by Corporate Printing to stay the BAP Fund arbitration.

Following the commencement of this action, Corporate Printing notified the Union that Corporate Printing was invoking an arbitration pursuant to League Option A of the 1975 Agreement. League Option A provides that an arbitration may be sought by the League to challenge the cost of living increase provisions of the 1975 Agreement.[5] The Union counterclaimed to stay the League Option A arbitration.

The justification must include support for the following contentions:

(1) That a substantial economic or competitive change not foreseen by the parties at the time that they entered into this Contract has occurred.

(2) That such substantial change has had a serious adverse effect on the business of the League's members.

The panel shall not order modifications in the wage or cost of living provisions of the Contract unless it concludes that the League has proved the above two contentions.

On or before August 22, the Union may file with the panel and with the League a written reply to the League's written justification. Following this, the panel will conduct hearings and render a decision. The panel must in reaching its decision give due weight and consideration to productivity gains achieved by the employers in their composing rooms since the date of ratification of the Contract and Special Agreement as compared to productivity gains made in other departments of the industry during the same period.

The panel shall not order modifications that extend in their effect past midnight October 3 following the October 4 on which the modifications sought are to be effective.

The decision of the panel shall be final and binding on the League. The Union may elect either to accept the award or cancel the Contract. If the Union elects to cancel the Contract, conditions prevailing prior to midnight October 3 of the year in question shall be maintained until an agreement is reached or other action is authorized by New York Typographical Union No. 6 or the League.

However, the employment or income guarantees as set forth in Article 1 of this Contract and Special Agreement shall survive cancellation of the Contract by the Union.

## DISCUSSION

### A. Initial Arbitration

Corporate Printing seeks to stay the initial arbitration relating to the BAP Fund on three theories. First, Corporate Printing claims that the Designated Arbitrator, Eisenberg, has been dismissed pursuant to the procedure provided for in the 1975 Agreement. Second, Corporate Printing claims that Eisenberg will not be able to render an impartial determination. Finally, Corporate Printing claims that the Union has not complied with the express conditions precedent to arbitration as provided for in the 1975 Agreement.

#### 1. Dismissal of the Designated Arbitrator

##### a. Plain Meaning of the Agreement

The effectiveness of the dismissal of Eisenberg as Designated Arbitrator rests on Corporate Printing's power to exercise the procedure for dismissal set forth in the 1975 Agreement. Corporate Printing presents various theories to support their exercise of this power. First, they claim that the term "party" in the paragraph of Article 13 relating to the dismissal of the Designated Arbitrator includes "each employer, not a League member, which is bound to [the] agreement." This definition would include Corporate Printing. This definition of the term "party" is found in the preamble to Article 14 which is set forth below.[6]

■ The application of this definition of the term "party" to Article 13 is rejected. The term "party" in Article 13 clearly refers to the League and the Union and not to the employers. Further, in order to interpret all of the provisions of the agreement consistently, the term "party" in Article 13 must apply to the League and the Union. A provision in Article 14 that relates to the dismissal of the Designated Arbitrator states that "either the League or the Union, upon sixty (60) days advance written notice to the other and to the Designated Arbitrator, shall have the right to seek the selection of another Designated Arbitrator ...." Therefore, the plain meaning of the 1975 Agreement does not grant the right to dismiss the Designated Arbitrator to employers such as Corporate Printing. This power is expressly granted to the League.

##### b. Can Corporate Printing Stand in the Shoes of the League?

■ Corporate Printing's second contention is that the League was the agent of employers such as Corporate Printing for purposes of the 1975 Agreement and that by withdrawing from the League and thereby terminating the agency, Corporate Printing may now exercise those powers granted to the League, as agent, in the 1975 Agreement. Corporate Printing relies on a number of cases involving the withdrawal of an employer from an employers' association and whether the employer is bound to a *subsequent* agreement between the association and the union. In this case, there is an agreement entered into between the League and the Union *prior* to the withdrawal from the League. The cases relied on by Corporate Printing are therefore inapposite to the present dispute.

■ Companies that withdraw from associations are generally bound by agreements entered into by the association prior to the withdrawal, *see Chicago Magnesium Castings Co. v. N.L.R.B.*, 612 F.2d 1028, 1035 (7th Cir.1980), absent language that limits the applicability of the agreement to association members, *see Western-Pacific Contractor's Material Co.*, 243 N.L.R.B. 1078 (1979). There is no such language in the 1975 Agreement. Thus, Corporate

---

6. The Preamble of Article 14 states that:

During the term of this Agreement there may arise differences of opinion between the parties (which term includes not only the League and the Union, but also each League member bound to this Agreement and *each employer,*

*not a League member, which is bound to this Agreement* ) with respect to issues (as that term is hereinafter defined), particularly, but not exclusively, by reason of the many substantial changes which have been made in pre-existing contractual provisions.

Printing is bound to the terms of the 1975 Agreement.

The question is therefore whether the League's power to dismiss under the 1975 Agreement was in its capacity as agent for the employers and as such can be exercised by the employers once the agency is terminated. The 1975 Agreement provides: "This Contract and Scale of Prices is made and entered into by and between the Printers League Section, Printing Industries of Metropolitan New York, Inc. ... as the authorized representative of the firms, corporations and individuals listed herewith ...." The League was thus designated as the employers' agent for purposes of negotiating the contract and binding its members to the contract that it entered into with the Union. The power to dismiss the Designated Arbitrator does not fall within this grant of authority to negotiate and bind the employers; the League's power to dismiss and select the Designated Arbitrator arises out of the express terms of the contract. The employers remain bound to these express contractual terms whether or not they remain in the League once the 1975 Agreement was entered into.

To accept Corporate Printing's contention would permit an employer to alter the provisions of a contract simply by withdrawing from an association. This result, if desired by the parties, may be drafted into the agreement, *see Western-Pacific Contractor's Materials Co.*, 243 N.L.R.B. 1078 (1979) (terms of agreement expressly applied only to association), but without such express language, this result cannot be considered to have been the intent of the parties to the agreement and cannot be permitted.[7] The power to dismiss the Designated Arbitrator is not related to the League's capacity as the employer's agent for collective bargaining and may not be invoked by an employer that terminates the unrelated agency.

c. Estoppel

Corporate Printing apparently has dealt directly with the Union since February 1983. Corporate Printing asserts that by this conduct, the Union has acquiesed to Corporate Printing's status as the subrogee of the League under the 1975 Agreement. As subrogee, Corporate Printing would thus be able to exercise any power granted to the League in the 1975 Agreement. The Union does not dispute the fact that the Union has dealt directly with Corporate Printing, but the Union notes that the treatment of Corporate Printing was no different than that of other non-League employers who were bound by the terms of either the original 1975 Agreement or under the agreement as it existed after 1982. Corporate Printing has not established that the direct dealings between the Union and Corporate Printing was different from the dealings that the Union had with others bound by the agreement. Corporate Printing has also failed to demonstrate how the fact that it has dealt with the Union directly in other circumstances affects the duties under the clauses of the 1975 Agreement that are the focus of this action.

Even assuming *arguendo* that the Union's treatment of Corporate Printing was different than that of other employers, the estoppel argument must fail. The requirements of establishing an estoppel have not been alleged. In order for the Union to be estopped from contesting Corporate Printing's exercise of the right to dismiss the Designated Arbitrator, Corporate Printing must demonstrate that the Union has acquiesced to this precise conduct in the past. There has been no showing that Corporate Printing has exercised

---

7. Corporate Printing argues that because it is the only employer bound under the original 1975 Agreement, and because the League has entered into an agreement that causes a conflict of interest between the League and Corporate Printing, Corporate Printing may stand in the shoes of the League regarding the League's rights under the 1975 Agreement. Regardless of the League's other contractual obligations, whether it is as an amendment or separate contract, the League is still named to exercise specific rights in the 1975 Agreement.

If Corporate Printing is not satisfied with the League's representation of Corporate Printing's interests under the 1975 Agreement, then it should pursue possible remedies against the League rather than a suit against the Union.

the power to dismiss the Designated Arbitrator in the past. Further, in order to establish an estoppel, the party against whom the estoppel is set must have acquiesced in such a manner that to allow the party to repudiate such conduct would be contrary to equity and good conscience. *See Emeco Indust., Inc. v. United States,* 485 F.2d 652, 657, 202 Ct.Cl. 1006 (1973); *Redington v. Hartford Accident and Indemnity Co.,* 463 F.Supp. 83, 86 (S.D.N.Y. 1978) ("[T]he *sin qua non* of an estoppel is some inequitable or fraudulent conduct engaged in by the party sought to be estopped which is reasonably relied upon by the other party to his detriment."). No such showing has been made based on the undisputed facts regarding the course of conduct between the parties since February 1983. The estoppel argument, therefore, is rejected.

### 2. Bias of Arbitrator

■ Corporate Printing seeks to stay the initial arbitration based on the Designated Arbitrator's alleged inability to render an impartial decision. This is based on what Corporate Printing calls "institutional partiality" resulting from Corporate Printing's withdrawal from the League. The presentation of this issue is premature. The determination of arbitrator bias is best raised on a petition to vacate the arbitration award, *Sunrise Undergarment Co. v. Undergarment & Negligee Workers' Union,* 419 F.Supp. 1282, 1286 (S.D.N.Y.1976); *see Marc Rich & Co. v. Transmarine Seaways Corp. of Monrovia,* 443 F.Supp. 386, 387 (S.D.N.Y.1978) (decision of disqualification left to arbitrator, decision subject to judicial review after award is made),[8] pursuant to the power to vacate an award based on bias found in the United States Arbitration Act, 9 U.S.C. § 10.[9] Therefore, the initial arbitration relating to the BAP Fund will not be stayed based on a claim of bias on the part of the Designated Arbitrator.

### 3. Failure to Comply with Procedures

■ Finally, Corporate Printing seeks to stay the initial arbitration based on a failure by the Union to comply with the procedures set forth in the 1975 Agreement as condition precedents to arbitration. The 1975 Agreement requires that disputes be submitted to the Joint Standing Committee as a first step in resolving disputes under the 1975 Agreement. Corporate Printing contends that the Union has not submitted the dispute to the Joint Standing Committee. Procedural disputes such as this, because they often develop in the context of the actual dispute sought to be arbitrated, are best left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 556–57, 84 S.Ct. 909, 917–18, 11 L.Ed.2d 898 (1964); *Bressette v. International Talc Co.,* 527 F.2d 211, 215 n. 6 (2d Cir.1975). The Designated Arbitrator, based on his familiarity with the 1975 Agreement, is best able to consider any objections based on procedural defects. Therefore, the BAP Fund arbitration will not be stayed by this court based on the alleged procedural defect.

### B. League Option A Arbitration

■ The Union seeks to enjoin the arbitration sought by Corporate Printing pursuant to League Option A. Corporate Printing claims the right to seek League

---

**8.** Courts have displaced arbitrators for bias prior to the rendering of a decision by the arbitrator but these cases involved an arbitrator specifically named in the agreement. *See, e.g., Christina Blouse Corp. v. I.L.G.W.U.,* 492 F.Supp. 508, 510–11 (S.D.N.Y.1980); *Erving v. Virginia Squires Basketball Club,* 349 F.Supp. 716, 719 (E.D.N.Y.), *aff'd,* 468 F.2d 1064 (2d Cir.1972). The courts displaced the arbitrator by reforming the agreement. These agreements are distinguishable from the agreement in this case. *See Marc Rich & Co. v. Transmarine Seaways*

*Corp. of Monrovia,* 443 F.Supp. 386, 388 (S.D.N.Y.1978) (distinguishes *Erving, supra,* based on arbitrator being specifically named in contract).

**9.** Section 10(b) of the United States Arbitration Act provides that a basis to vacate an arbitrator's award is "where there was evident partiality ... in the arbitrator." For a discussion of what constitutes "evident partiality" see *Morelite Constr. Corp. v. New York City District Council Carpenters Benefit Funds,* 748 F.Supp. 79 (2d Cir. 1984).

Option A arbitration, which by the terms of the 1975 Agreement is granted to the League, based on its ability to step into the shoes of the League. This is the same argument presented by Corporate Printing to support the dismissal of the Designated Arbitrator in the initial arbitration discussed above. The argument is rejected based on the reasoning above. Corporate Printing may not simply step into the shoes of the League with regard to rights expressly granted to the League in the 1975 Agreement. The League Option A arbitration is therefore stayed.

### CONCLUSION

For the reasons stated herein, the BAP Fund arbitration will not be stayed nor will the Designated Arbitrator be dismissed. The League Option A arbitration is hereby stayed.

SO ORDERED.