[No. G000455. Fourth Dist., Div. Three. Oct. 31, 1985.]

LOUIS TONETTI, Plaintiff and Respondent, v.
STEPHEN L. SHIRLEY et al., Defendants and Appellants.

COUNSEL

Overton, Lyman & Prince, Peter Brown Dolan, William J. Coyne, Stephen E. Traverse and Maren E. Nelson for Defendants and Appellants.

Milbank, Tweed, Hadley & McCloy, Andrew J. Connick and Teresa A. Blasberg as Amici Curiae on behalf of Defendants and Appellants.

Rick L. Lund and Robert A. Curtis for Plaintiff and Respondent.

## Opinion

**WALLIN, J.**—Stephen L. Shirley and Kidder, Peabody & Company, Inc. (collectively referred to as Kidder) appeal the trial court's order denying their petition to compel arbitration of a dispute between them and an employee. They argue federal law mandates the enforcement of the arbitration provision contained in the contract of employment.

In March 1980, Louis Tonetti signed a New York Stock Exchange, Inc. Agreement (NYSE Agreement) and an American Stock Exchange, Inc. Application (AMEX Application)[1] in connection with his employment as a stockbroker and investment analyst with Kidder, a securities brokerage firm. Both agreements contained provisions requiring arbitration of any dispute arising out of Tonetti's employment or termination in accordance with the Constitution and Rules of the New York Stock Exchange.

In August 1982, a dispute arose between the parties regarding Kidder's allegedly defamatory statements and writings referring to Tonetti's qualifications and performance as a stock broker and investment analyst. Tonetti filed suit against Kidder alleging libel, defamation, slander, and negligent and intentional infliction of emotional distress. Kidder responded by filing a motion for order staying proceedings and a petition for order compelling arbitration.

The trial court denied both requests in June 1983, finding arbitration was not "appropriate" in light of *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147 [175 Cal.Rptr. 851]. *Hope* considered the validity of a similar arbitration provision in an employment contract between a securities brokerage firm and an account executive and found it unconscionable based on *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165]. Kidder argues that federal preemption renders state adhesion contract principles irrelevant and that the arbitration provision is not uncon-

---

[1] Paragraph (d) of the NYSE Agreement reads: "Any controversy between me and any member or member organization arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the [New York Stock] Exchange."

Paragraph (10) of the AMEX Application provides: "I agree that any controversy between me and any member or member organization of the American Stock Exchange, Inc. arising out of my employment or termination of my employment by and with such member or member organization or any successor thereto shall be settled by arbitration at the instance of any such party in accordance with the Constitution and Rules then obtaining of the American Stock Exchange Inc. or, if the employer be a member or member organization of the New York Stock Exchange, Inc., in accordance with the Constitution and Rules of that Exchange."

scionable under federal law. We agree California law has been preempted and reverse and remand for a determination under federal law.

I

Section 2 of the Federal Arbitration Act (the Act) provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) ▋ Recent United States Supreme Court cases have made it clear this federal statute preempts state law on the issue of arbitrability of an agreement falling under the Act. (*Southland Corporation* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Moses H. Cone Hospital* v. *Mercury Constr. Co.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927].)

In *Moses H. Cone Hospital* v. *Mercury Constr. Co.*, *supra*, 460 U.S. 1, the court reversed a district court's stay order of an action seeking arbitration pending the resolution of a state court suit on the same issues. The court stated the federal act governed the issue of arbitrability of the dispute between the parties: "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Id.*, at pp. 24-25 [74 L.Ed.2d at p. 785, 103 S.Ct. at p. 927].)

In *Southland Corporation* v. *Keating, supra,* 465 U.S. 1, the court reversed the California Supreme Court's holding that the California Franchise Investment Law invalidated an arbitration clause in a franchise agreement. "In enacting section 2 of the Federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (*Id.*, at p. 10 [79 L.Ed.2d at p. 12, 104 S.Ct. at p. 858].) The court held Congress had thus created a substantive rule of arbitrability applicable in state as well as federal courts. (*Id.*, at pp. 16-17 [79 L.Ed.2d at pp. 15-16, 104 S.Ct. at p. 861].)

The majority of state courts considering the preemption issue have held the Act controls the enforceability of arbitration clauses in contracts involving commerce which are litigated in state courts. (See, e.g., *Blanks* v. *Midstate Constructors, Inc.* (Tex.Civ.App. 1980) 610 S.W.2d 220, 223; *Garmo* v. *Dean, Witter, Reynolds, Inc.* (1984) 101 Wn.2d 585 [681 P.2d 253, 254-255]; *Episcopal Housing Corp.* v. *Federal Ins. Co.* (1977) 269 S.C. 631 [239 S.E.2d 647, 650].) In *Ex parte Alabama Oxygen Co., Inc.* (Ala. 1983) 433 So.2d 1158, the Supreme Court of Alabama determined that the Act did not preempt state policies regarding arbitration. However, the opinion was vacated by the United States Supreme Court and the case remanded for reconsideration in light of *Southland Corporation* v. *Keating, supra,* 465 U.S. 1. (*York International* v. *Alabama Oxygen Co., Inc.* (1984) 465 U.S. 1016 [79 L.Ed.2d 668, 104 S.Ct. 1260].) On remand, the Alabama court held federal law controlled. (*Ex parte Alabama Oxygen Co., Inc.* (Ala. 1984) 452 So.2d 860.)

■ The overwhelming weight of authority compels us to conclude California adhesion contract principles are inapplicable to the enforcement of an arbitration clause in a contract governed by the Act.

## II

■ Tonetti argues federal law does not apply to this case because his contract of employment is exempt from the Act under section 1, which states: "[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) We disagree.

Many federal courts of appeal have held this exclusionary clause applicable only to workers directly engaged in the channels of interstate commerce, i.e., workers employed in the transportation industries. (*Miller Brewing* v. *Brewery Wkrs. Local U. No. 9, etc.* (7th Cir. 1984) 739 F.2d 1159, 1162; *Erving* v. *Virginia Squires Basketball Club* (2d Cir. 1972) 468 F.2d 1064, 1069; *Dickstein* v. *DuPont* (1st Cir. 1971) 443 F.2d 783, 785; *Tenney Engineering* v. *United Electrical R. & M. Wkrs.* (3d Cir. 1953) 207 F.2d 450, 453; *Legg, Mason & Company, Inc.* v. *Mackall & Coe, Inc.* (D.D.C. 1972) 351 F.Supp. 1367, 1371, fn. 4.)[2] Furthermore, disputes between a member of a national stock exchange and its employee are consistently held to be arbitrable, notwithstanding the exclusionary clause. "[Appellants] do not seriously contend that as 'account executives,' they fall within the exception from coverage in § 1 of the Arbitration Act . . . ."

---

[2]Cf. *United Electrical, R. & M. Wkrs.* v. *Miller Metal Prod.* (4th Cir. 1954) 215 F.2d 221, 223-224; *Wilder* v. *Whittaker Corp.* (1985) 169 Cal.App.3d 969 [215 Cal.Rptr. 536].)

(*Stokes* v. *Merrill Lynch, Pierce, Fenner & Smith* (6th Cir. 1975) 523 F.2d 433, 436. See also *Merrill Lynch, Pierce, Fenner & Smith* v. *Hovey* (8th Cir. 1984) 726 F.2d 1286; *Dickstein* v. *DuPont, supra,* 443 F.2d 783; *Merrill Lynch, Pierce, Fenner & Smith* v. *Shubert* (M.D. Fla. 1983) 577 F.Supp. 406; *Legg, Mason & Company, Inc.* v. *Mackall & Coe, Inc., supra,* 351 F.Supp. 1367.)[3] We thus find this contract within the scope of the Act.

## III

We next turn to the distinction between federal law and California law on whether arbitration under the NYSE Rules of the New York Stock Exchange is unconscionable. In *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147 [175 Cal.Rptr. 851], the court reviewed the composition of the arbitral body for disputes between a member and a nonmember of the NYSE as required by the NYSE Constitution and Rules applicable in July 1981. At that time, nonmember controversies involving more than $100,000 were heard and determined by a panel of five arbitrators selected by the arbitration director, who was designated by the chairman of the board of NYSE, subject to the approval of the board. Based on these procedures, the court found the arbitration provisions unconscionable. "The New York Stock Exchange, and thus its board of directors, performs a variety of quasi-public functions; but insofar as the board of directors functions in disputes between member firms and their employees, it is presumptively biased in favor of management. . . . This is not to say that members of the board of directors are in fact biased, or that they would necessarily exercise their authority in a consciously biased fashion; it is to say that the structure of governance of the exchange is such that there exists a presumptive *institutional* bias in favor of member firms and members who constitute the electoral constituency of the board." (*Id.,* at p. 154.)

The court was not persuaded otherwise by the rights provided the employee: the right to a panel of arbitrators composed of a majority of members who are not from the securities industry, the right to peremptorily challenge one arbitrator, the right to a hearing and to present evidence, the right to counsel, and the right to a verbatim record. The court noted: "The presumption of bias does not disappear simply because the decisional power is delegated [to a panel of arbitrators]. Nor is the presumption dispelled by rules requiring the arbitrators to be persons not engaged in the securities business, or giving the nonmember one peremptory challenge, or granting

---

[3]At oral argument, Tonetti conceded the subject matter of this tort action arose out of his employment or its termination, thus falling within the language of the contract's arbitration clause. Therefore, we do not discuss this issue.

the director of arbitration authority to disqualify an arbitrator. Evenhandedness could be assured by a procedure which permits selection of arbitrators by the parties to the dispute or, failing that, through the auspices of some truly neutral party. In the absence of such a procedure we must conclude, as in *Scissor-Tail* [*Graham* v. *Scissor-Tail, supra,* 28 Cal.3d 807], that the arbitration procedures of the New York Stock Exchange fail to meet minimal levels of integrity." (*Id.,* at pp. 154-155.)

In contrast to California's position, federal cases have held the procedures to be fair and enforceable. In *Drayer* v. *Krasner* (2d Cir. 1978) 572 F.2d 348, the court found the composition of the NYSE arbitration tribunal to be within the rule of reason and not a violation of the antitrust laws. As in *Hope,* the plaintiff objected to the method of selection of the panel: "Drayer's complaint is essentially that this method of selection departs from two widely accepted methods for choosing arbitrators—one in which each party selects an arbitrator and the two so selected agree on a third, with some neutral source empowered to break a deadlock, and another in which selection of the arbitrators is left to some wholly neutral organization such as the American Arbitration Association. [¶] We do not think that, absent evidence of actual unfairness in the operation of the NYSE arbitration tribunals [citation], their composition is so improper as to invalidate the program under the antitrust laws." (*Id.,* at p. 359.)

In *Pelzman* v. *Paine, Webber, Jackson & Curtis, Inc.* [1983-1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶99408 (D.D.C. 1983), the court squarely rejected the claim of an employee-broker that the NYSE arbitration procedures were unconscionable. "Plaintiff relies heavily on *Hope* v. *Superior Court of the County of Santa Clara,* 122 Cal.App.3d 147, 175 Cal.Rptr. 851 (1st Dist. 1981), *cert. denied,* 456 U.S. 910 (1982). In that case, the California Supreme Court [*sic*] held that the NYSE arbitration procedures were presumptively biased, and therefore unconscionable . . . . [¶] The holding in *Hope* appears to be unique. The Court has been unable to find any other cases with similar holdings. In fact, the case is in direct conflict with other cases that have rejected precisely the same unconscionability argument against the NYSE arbitration procedure advanced here. [Citations.] In addition, in *Drayer* v. *Krasner [supra],* Judge Friendly evaluated the NYSE arbitration tribunals in another context (involving the antitrust laws and the rule of reason) and rejected any presumption of bias." (*Ibid.*)

 Thus, under federal law, Kidder does not have the burden of rebutting the presumption of institutional bias that exists in *Hope* when moving to compel arbitration. Instead, Tonetti has the burden of showing actual bias in the operation of the arbitration procedures. (*Drayer* v. *Krasner, supra,*

572 F.2d at p. 359.) Furthermore, Kidder's position is bolstered by the strong federal policy favoring arbitration and the mandate of the United States Supreme Court that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." (*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. at pp. 24-25 [74 L.Ed.2d at p. 785, 103 S.Ct. at p. 941].)

The trial court received no evidence on the actual operation of the NYSE arbitration procedures as they apply to Tonetti. Indeed, it is our understanding that neither the NYSE Rules nor the Constitution were presented to the trial court. Thus, the case must be remanded so the issue of unconscionability can be properly determined under federal law and the NYSE Rules as they exist at the time of the new hearing.

The judgment is reversed and the cause is remanded to the trial court. The parties are to bear their own costs on appeal.

Trotter, P. J., and Crosby, J., concurred.