[No. B014485. Second Dist., Div. Five. Apr. 19, 1988.]

KENNETH MORGAN THOMAS, Plaintiff and Respondent, v. BARCLAY PERRY et al., Defendants and Appellants.

COUNSEL

Morrison & Foerster, Peter Brown Dolan and Maren E. Nelson for Defendants and Appellants.

Julian B. Fensten and Bruce Gelber for Plaintiff and Respondent.

OPINION

**ASHBY, Acting P. J.**—This is an appeal from an order denying a motion to compel arbitration. (Code Civ. Proc., § 1294, subd. (a).) Respondent Kenneth Morgan Thomas sued his former employer, Kidder, Peabody & Company, Inc. (hereafter Kidder, Peabody), and two of its employees, appellants Barclay Perry and James Johnston. Thomas sought to recover a $40,000 commission he alleged is due to him by virtue of an oral contract with Kidder, Peabody and appellants. He sued for breach of contract, seeking damages of $40,000, and for conversion, conspiracy and breach of fiduciary duty, for which he sought additional compensatory and punitive damages.

Appellants moved to compel arbitration pursuant to an agreement respondent signed at the time he was hired by Kidder, Peabody.[1] The trial court denied the motion to compel arbitration, on the ground that under California Labor Code section 229, respondent could maintain this suit notwithstanding his agreement to arbitrate.[2] The court rejected appellants' contention that California Labor Code section 229 is preempted by the Federal Arbitration Act, 9 United States Code section 1 et seq. In a prior unpublished opinion, we affirmed the trial court's order. (*Thomas* v. *Perry* (Apr. 10, 1986) B014485.) After review was denied by the California Supreme Court, appellants appealed to the United States Supreme Court. (28 U.S.C. § 1257(2).)[3]

The United States Supreme Court reversed, holding that section 2 of the Federal Arbitration Act preempts California Labor Code section 229.

---

[1] Kidder, Peabody invoked diversity jurisdiction and filed a similar petition in Federal District Court, and is not a party to this appeal.

[2] Labor Code section 229 states in pertinent part, "Actions . . . for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate."

[3] 28 United States Code section 1257 provides in pertinent part that, "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows: . . . [¶] (2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

(*Perry* v. *Thomas* (1987) 482 U.S. 483, 492 [96 L.Ed.2d 426, 437, 107 S.Ct. 2520, 2526].) Section 2 of the Federal Arbitration Act " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' [This body of substantive law is] enforceable in both state and federal courts." (*Id.* at p. 489 [96 L.Ed. 2d at p. 435 107 S.Ct. at p. 2525].) The Supreme Court remanded this matter to us for further proceedings not inconsistent with its opinion. (*Id.* at p. 492 [96 L.Ed.2d at p. 437, 107 S.Ct. at p. 2527].)

On remand, respondent contends that the trial court's order denying the motion to compel arbitration may nevertheless be upheld on two alternative grounds: (1) "that the subject arbitration clause is an unconscionable and unenforceable contract of adhesion" and (2) "that these appellants, Barclay Perry and James Johnston, lack standing to enforce the arbitration clause." Finding no merit to these contentions, we reverse with instructions to grant the motion to compel arbitration.

### FACTUAL BACKGROUND

In connection with his application for employment with Kidder, Peabody, respondent was required to execute a Uniform Application for Securities Industry Registration form, which contained a provision stating "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, . . ."

Rule 347 of the New York Stock Exchange Inc. (1975), with which respondent registered, provides that, "Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules."

The dispute in this case involves an alleged agreement for commissions. According to the allegations of respondent's complaint, "[at] all times material herein, each defendant was acting in the course and scope of his employment for defendant, Kidder, Peabody. An oral agreement was made in October, 1982, between plaintiff and defendants [*sic*] Johnston, which agreement was supervised by defendant Perry on behalf of defendant Kidder, Peabody."

## UNCONSCIONABLE AND UNENFORCEABLE CONTRACT OF ADHESION

■ Respondent contends "[a]s appellants have previously admitted, a wage-earner in THOMAS' position has no choice but to sign the clause or be excluded from working for *any* of the firms of the New York Stock Exchange; should a dispute arise, the arbitrator is selected by the Exchange, of which THOMAS' employer (Kidder Peabody) is a member-firm; and, furthermore, the rules for arbitration under this agreement do not allow for any meaningful discovery by an 'outsider' in THOMAS' position. . . . It is unconscionable to require THOMAS to submit his claim against Kidder Peabody's employees to an arbitrator selected by the very organization (N.Y.S.E.) of which Kidder Peabody is a member-firm."

■ Preliminarily, we must determine whether respondent's claim that the arbitration clause is an unconscionable and unenforceable contract of adhesion should be decided according to state law or according to federal law. The United States Supreme Court expressly addressed the choice of law issue in footnote 9 of its opinion, as follows: "We also decline to address Thomas' claim that the arbitration agreement in this case constitutes an unconscionable, unenforceable contract of adhesion. This issue was not decided below, see nn 4 and 6, supra, and may likewise be considered on remand. [¶] We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called 'standing' and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* [citation], 'save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 USC § 2 [9 USCS § 2] (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. [Citations.] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (*Perry* v. *Thomas, supra,* 482 U.S. at pp. 492-493 [96 L.Ed.2d at p. 437 fn. 9, 107 S.Ct. at p. 2527].)

■ Respondent's arguments in this case are clearly the type addressed to the uniqueness of an agreement to arbitrate. He complains of the manner

in which the arbitrator is selected under the rules of the New York Stock Exchange, and of the absence under the arbitration rules of a court-style discovery process. Under footnote 9 of the United States Supreme Court opinion, therefore, respondent's claim that the arbitration agreement is unenforceable cannot be sustained on the basis of such *state* law authorities as *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147, 154 [175 Cal.Rptr. 851] and *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 825 [171 Cal.Rptr. 604, 623 P.2d 165], cited by respondent's brief in the earlier appeal of this case. Rather, we must determine whether the arbitration clause would be held unconscionable and unenforceable as a matter of *federal* law. (See *Liddington* v. *The Energy Group, Inc.* (1987) 192 Cal.App.3d 1520, 1526-1528 [238 Cal.Rptr. 202] [citing *Perry*]; *Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1146-1151 [219 Cal.Rptr. 616] [pre-*Perry,* concluding that whether arbitration provision was unconscionable must be determined by federal rather than state law]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637 [223 Cal.Rptr. 838] [pre-*Perry,* concluding that federal law governs, rather than state adhesion contract principles]; *Bayma* v. *Smith Barney, Harris Upham and Co., Inc.* (9th Cir. 1986) 784 F.2d 1023, 1023-1025 [pre-*Perry,* concluding that federal law, rather than *Hope* v. *Superior Court, supra,* 122 Cal.App.3d 147, governs whether arbitration clause was revocable].)

Respondent has cited no federal authority that the manner of selection of arbitrators or the informal discovery process under the rules of the New York Stock Exchange are so unfair that enforcement of the arbitration clause would be unconscionable. On the contrary, existing federal precedent finds the arbitration rules not to be unconscionable or presumptively biased (*Cohen* v. *Wedbush, Noble, Cooke, Inc.* (9th Cir. 1988) 841 F.2d 282, 286; *Drayer* v. *Krasner* (2d Cir. 1978) 572 F.2d 348, 359; *Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at p. 1150 [applying federal law]), and respondent has not suggested that he could prove actual bias.[4]

---

[4] A similar conclusion was reached in *Parr* v. *Superior Court* (1983) 139 Cal.App.3d 440, 446-448 [188 Cal.Rptr. 801], by the same court which had decided *Hope* v. *Superior Court, supra,* 122 Cal.App.3d 147. *Parr* distinguished *Hope* on the ground that in the meantime the New York Stock Exchange had adopted a new arbitration code with the specific approval of the Securities Exchange Commission. (*Parr,* 139 Cal.App.3d at pp. 446-447.) Although *Parr* was decided on a state law basis, it relied in part on federal authority by concluding, "The SEC is an agency of the federal government which bears as one of its most important duties the protection and enforcement of the public's interest in the area of securities. (See, e.g., 15 U.S.C. §§ 78j, 78k-l, 78l, 78o(c); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Ware* (1973) 414 U.S. 117, 128-130 [38 L.2d.2d 348, 359-360, 94 S.Ct. 383]; 17 C.F.R. § 200.1 (d).) Without some basis for doing so, we are reluctant to find unconscionable procedures which have been approved by the SEC. We find that the procedures outlined in the NYSE rules display beyond any doubt much more than the requisite minimal integrity." (*Parr,* 139 Cal.App.3d at p. 447; see also *Shearson/American Express, Inc.* v. *McMahon* (1987) 482 U.S. 220, 234 [96

## STANDING

■ The second alternative ground offered by respondent for upholding the trial court's order refusing to compel arbitration is that appellants Perry and Johnston, as distinguished from the employer Kidder, Peabody, have no "standing" to enforce the arbitration cause.[5] Respondent contends that appellants were not parties to the arbitration clause nor are they members or member-organizations of the New York Stock Exchange, and therefore they may not rely upon the arbitration requirement.

This contention is without merit under either federal or state law. By the allegations of respondent's own complaint, the individual defendants were at all times acting on behalf of Kidder, Peabody in the course and scope of their employment. Under such circumstances they are entitled to invoke the arbitration requirement. (*Berman* v. *Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1004 [119 Cal.Rptr. 130]; *Letizia* v. *Prudential Bache Securities, Inc.* (9th Cir. 1986) 802 F.2d 1185, 1187-1188; *Dryer* v. *Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826].)

## CONCLUSION

Since the sole ground relied upon by the trial court for denying the motion to compel arbitration has been overruled by the United States Supreme Court, and the trial court's order cannot be sustained on the alternative grounds suggested by respondent, the order must be reversed.

The order denying appellants' motion to compel arbitration and companion motion to stay the proceeding pending arbitration is reversed with directions to grant such motions. Costs on appeal awarded to appellants.

Boren, J., and Hastings, J.,* concurred.

---

L.Ed.2d 185, 199, 107 S.Ct. 2332, 2341] [SEC approval of arbitration procedures of stock exchanges].)

[5]The United States Supreme Court declined to reach this issue, characterizing it as a straightforward issue of contract interpretation which could be resolved on remand: "whether the arbitration provision inures to the benefit of appellants and may be construed, in light of the circumstances surrounding the litigants' agreement, to cover the dispute that has arisen between them." (*Perry* v. *Thomas, supra,* 482 U.S. at p. 492 [96 L.Ed.2d at p. 437, 107 S.Ct. at p. 2527].)

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.