[No. A040522. First Dist., Div. Three. June 20, 1988.]

KATHRYN A. HEILY, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.,
Real Parties in Interest.

COUNSEL

Shand S. Stephens, Patricia H. Cullison and Bronson, Bronson & McKinnon for Petitioner.

No appearance for Respondent.

W. Reece Bader, Frederick Brown, Jay M. Cutler and Orrick, Herrington & Sutcliffe for Real Parties in Interest.

OPINION

MERRILL, J.—Petitioner, the plaintiff in a wrongful discharge action, challenges a court order requiring her to arbitrate her dispute under procedures established by the New York Stock Exchange (NYSE hereinafter). She contends both that her agreement to arbitrate was procured by fraud and that it should be set aside as unconscionable because of institutional bias in arbitration conducted under the auspices of the NYSE. We reject her contentions.

Petitioner has filed an action against real parties in interest, Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch hereinafter) and two individual Merrill Lynch employees. The complaint alleges that after 18 years of service as a securities broker petitioner was discharged by real parties for failure to participate in a scheme to conceal from her clients the real reason they sustained losses in a Merrill Lynch sponsored options investment program. Merrill Lynch's position is that petitioner was discharged because she divulged confidential information about the settlement of claims for investment losses.

Shortly after petitioner filed the complaint, real parties petitioned the court for an order compelling arbitration. Real parties cited arbitration provisions in several agreements signed by petitioner during her employment with Merrill Lynch. These provisions called for arbitration under the procedures of either the NYSE or the National Association of Securities Dealers (NASD hereinafter).

Petitioner opposed the petition to compel arbitration on several grounds. She argued that the arbitration agreements were unenforceable adhesion contracts, that they were procured through fraud and use of undue influence, and that real parties could not seek an order compelling arbitration because they were barred by their "unclean hands." She presented

declarations from persons who had served as arbitrators for the NASD and the NYSE and who would testify that employer/employee arbitrations are biased in favor of securities industry employers. Real parties filed a reply memorandum, supported by extensive deposition testimony, documentary evidence, and declarations. Real parties also moved to strike petitioner's declarations as "speculative, hearsay, irrelevant or otherwise inadmissible." The court did not rule on the motion to strike.

After hearing, the court granted real parties' motion to compel arbitration. Petitioner then moved for reconsideration. The court heard the motion to reconsider, reexamined its ruling on the merits, and denied the motion.

Petitioner sought a writ of mandate and/or prohibition from this court. We denied the petition. Petitioner then sought review in the Supreme Court. That court granted review and retransferred the matter to this court with the following directions: "to issue an alternative writ to be heard before that court when the proceeding is ordered on calendar. (See *Tonetti v. Shirley* (1985) 173 Cal.App.3d 1144 [219 Cal.Rptr. 616]; *Marc Rich & Co.* v. *Transmarine Seaways Corp.* (S.D.N.Y. 1978) 443 F.Supp. 386, 388; and *Corporate Printing Co.* v. *N.Y. Typographical Union* (S.D.N.Y. [1984]) 601 F.Supp. 323, 328, fn. 8.)" We issued the alternative writ and heard the matter. We again deny the petition.

■ Citing a mixture of state law and federal law decisions, petitioner contends that an agreement to arbitrate may be set aside if the designated arbitrator or arbitral body is biased or not neutral. ■ In order to evaluate this contention we must first determine whether state or federal law controls. Recent case law has provided a clear answer.

In *Merrill Lynch, Pierce, Fenner & Smith* v. *Ware* (1973) 414 U.S. 117 [38 L.Ed.2d 348, 94 S.Ct. 383], decided without consideration of the Federal Arbitration Act (FAA), 9 United States Code section 1 et seq., the United States Supreme Court upheld application of a state law that authorized employees to bring actions to collect wages without regard to private arbitration agreements. (*Id.,* at pp. 134-140 [38 L.Ed.2d at pp. 363-367].) The *Ware* decision opened the door to arguments that state law might govern arbitrability of agreements such as petitioner's. However, in *Perry* v. *Thomas* (1987) 482 U.S. 483 [96 L.Ed.2d 426, 107 S.Ct. 2520], the court directly confirmed that the FAA controls lawsuits brought by employees against securities brokerage firms.

In *Perry* the employee's action arose from a dispute over commissions on the sale of securities. Relying on a signed arbitration agreement, the employer sought arbitration under the authority of section 2 of the FAA: "A

written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) ■ Citing *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927], and *Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852], the *Perry* court concluded that the effect of section 2 is to ". . . 'create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' [Citation.]" (*Perry* v. *Thomas, supra,* 482 U.S. at p. 489 [96 L.Ed.2d at p. 435, 107 S.Ct. at p. 2525].)

■ Prior to *Perry,* state and federal courts disagreed among themselves about whether federal law governed questions of interpretation, validity and enforcement of arbitration agreements. Through dicta in a footnote, the *Perry* court shed some light on this question: "We also decline to address Thomas' claim that the arbitration agreement in this case constitutes an unconscionable, unenforceable contract of adhesion. This issue was not decided below, see nn 4 and 6, supra, and may likewise be considered on remand. [¶] We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called 'standing' and unconscionability arguments are asserted. In instances such as these, the text of § 2 provides the touchstone for choosing between state law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* see Moses H. Cone Memorial Hospital v Mercury Construction Corp. 460 US 1, 24, 74 L Ed 2d 765, 103 S Ct 927 (1983), 'save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 USC § 2 . . . (emphasis added). Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. See Prima Paint, supra, [*Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395], at 404, 18 L Ed 2d 1270, 87 S Ct 1801; Southland Corp. v Keating 465 US, at 16-17, n 11, 79 L Ed 2d 1, 104 S Ct 852. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (*Perry* v. *Thomas, supra,* 482 U.S. at pp. 492-493, fn. 9 [96 L.Ed.2d at p.

437, 107 S.Ct. at p. 2527]; see also *Liddington* v. *The Energy Group, Inc.* (1987) 192 Cal.App.3d 1520, 1527-1528 [238 Cal.Rptr. 202].)

Petitioner argued below, and argues here too, that under *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165], the NYSE, because of its status and identity, is presumptively biased in favor of real parties in interest, and that the arbitration agreement is therefore unconscionable and should not be enforced. This argument directly affronts the analysis of *Perry* v. *Thomas* because *Graham* is a state law decision weaving together principles of adhesion contracts and state statutes governing the neutrality of arbitrators. (*Id.,* at pp. 820-828.)     *Perry* teaches that a court may not rely upon anything that is unique to an agreement to arbitrate when assessing unconscionability of an agreement governed by the FAA. State law concerning arbitration or arbitrators cannot form a basis for evaluating state law enforceability of the contract. (Accord *Thomas* v. *Perry* (1988) 200 Cal.App.3d 510, 515 [246 Cal.Rptr. 156], on remand after decision in *Perry* v. *Thomas, supra,* 482 U.S. 483.)

Having concentrated on state law, petitioner has ignored decisions applying federal law to questions of bias in arbitration. The California Supreme Court's retransfer order directed our attention to decisions applying federal law.

The first case cited, *Tonetti* v. *Shirley, supra,* 173 Cal.App.3d 1144, a California decision, explains one of the differences between state and federal law. There a stockbroker sued his employer for defamation and related causes of action. The employer sought arbitration under the rules of the NYSE, but the trial court denied the request, relying on a state law decision that found a similar brokerage/account executive contract provision unconscionable. *Tonetti* reversed, concluding that federal law preempted and that the arbitration provision was not unconscionable under federal law. (*Id.,* at pp. 1146-1147.)

The court examined California law on unconscionability of arbitration under the rules of the NYSE, noting that in *Hope* v. *Superior Court* (1981) 122 Cal.App.3d 147 [175 Cal.Rptr. 851], the court had cited *Graham* v. *Scissor-Tail, Inc., supra,* 28 Cal.3d 807, and had concluded that the arbitration procedures of the NYSE failed to meet minimal levels of integrity. (*Tonetti* v. *Shirley, supra,* 173 Cal.App.3d at pp. 1149-1150.) The *Tonetti* court then found that "[i]n contrast to California's position, federal cases have held the procedures to be fair and enforceable." at p. 1150.) One federal decision found the composition of the NYSE arbitration tribunal to be within the "rule of reason" and not a violation of the antitrust laws (*Drayer* v. *Krasner* (2d Cir. 1978) 572 F.2d 348, 360, cert. den. 436 U.S. 948

[56 L.Ed.2d 791, 98 S.Ct. 2855]), and another decision rejected a claim of an employee-broker that the NYSE arbitration procedures were unconscionable (*Pelzman* v. *Paine, Webber, Jackson & Curtis, Inc.* [1983-1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99408 (D.D.C. 1983)). The *Tonetti* court concluded that unlike state law, federal law placed the burden of showing institutional bias upon the person resisting arbitration. (*Tonetti* v. *Shirley, supra,* 173 Cal.App 3d at p. 1150.) "The trial court received no evidence on the actual operation of the NYSE arbitration procedures as they apply to Tonetti. . . . Thus, the case must be remanded so the issue of unconscionability can be properly determined under federal law and the NYSE Rules as they exist at the time of the new hearing." (*Id.,* at p. 1151.)

Two other federal decisions, not mentioned by *Tonetti,* but cited in the California Supreme Court's transfer order here, show that under federal law as it was then applied, a litigant could assert bias of the arbitrator or arbitral panel as a basis for avoiding arbitration or replacing the arbitrator. In *Marc Rich & Co.* v. *Transmarine Seaways Corp., supra,* 443 F.Supp. 386, the court was asked to disqualify an arbitrator selected by one party because the arbitrator was currently involved in an unrelated dispute with the selector's adversary. In order to prevent repeated prearbitration attacks upon a party's designation of the arbitrator, the *Marc Rich & Co.* court found that it lacked jurisdiction to rule on the issue. However, in the course of its ruling, it noted that a different rule would apply if the contract had specifically named the arbitrator, as in *Erving* v. *Virginia Squires Basketball Club* (E.D.N.Y. 1972) 349 F.Supp. 716, 719, affirmed (2d Cir. 1972) 468 F.2d 1064, and *Siedman* v. *Merrill Lynch,* unreported decision (S.D.N.Y. Aug. 24, 1977) 75 Civil No. 6316. In *Siedman,* according to the *Marc Rich & Co.* court, the court found jurisdiction, prior to the commencement of arbitration, to consider the qualifications of the NYSE as arbitrator of a dispute. Subsequent history of the case reveals that though the court considered the allegation of bias, it declined to order the NYSE replaced by the American Arbitration Association as the arbitral body. (See *Siedman* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (S.D.N.Y. 1979) 465 F.Supp. 1233, 1235 [Note that the court in *Marc Rich & Co., supra,* misspelled *Siedman* "Seidman."].)

In *Corporate Printing Co.* v. *N.Y. Typographical Union, supra,* 601 F.Supp. 323, the last decision cited by the California Supreme Court's transfer order, the court also found a prearbitration attack upon the institutional bias of an arbitrator premature. However, a footnote acknowledged a different approach where the arbitrator was named in the agreement, citing *Erving, supra,* and *Marc Rich & Co., supra.* (*Id.,* at p. 328, fn. 8.)

*Marc Rich & Co., supra,* Corporate Printing Co., and particularly *Siedman, supra,* show that under federal law, as it had been stated before the

Supreme Court transferred this case to us, a litigant could make a prearbitration showing that the NYSE or other designated arbitral panel was institutionally biased, but that unlike the situation under California law, no presumption of institutional bias would obtain. But more recent Ninth Circuit authority holds otherwise.

In *Cohen* v. *Wedbush, Noble, Cooke, Inc.* (9th Cir. 1988) 841 F.2d 282, the court rejected a challenge similar to petitioner's, finding that "agreements to arbitrate disputes in accordance with SEC-approved procedures are not unconscionable as a matter of law." (*Id.,* at p. 286.) In *Cohen,* margin account customers sought to avoid arbitration of a dispute over the broker's sale of some collateral in their margin account. Citing *Lewis* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1986) 183 Cal.App.3d 1097 [228 Cal.Rptr. 345], and *Lewis* v. *Prudential-Bache Securities, Inc.* (1986) 179 Cal.App.3d 935 [225 Cal.Rptr. 69], decisions relied upon heavily by petitioner here, they argued that the arbitration agreement was unconscionable.

Because of a recent United States Supreme Court decision, *Cohen* rejected plaintiffs' contention: "We respectfully disagree, however, with the conclusion of the California courts that the doctrine of unconscionability is applicable under these circumstances. *Cf. Pierson* v. *Dean, Witter, Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984) (rejecting claim that agreement to arbitrate securities claims was unconscionable where plaintiffs made no showing that agreement was commercially unreasonable or that they had no reasonable opportunity to understand it). As the Supreme Court has recognized, the Securities and Exchange Commission has virtually plenary authority over the arbitration procedures adopted by the national securities exchanges and securities associations. *See Shearson/American Express, Inc.* v. *McMahon,* 482 U.S. 220, [96 L.Ed.2d 185, 107 S.Ct. 2332, 2341], (1987). This authority includes the power to 'abrogate, add to, and delete from' the arbitration rules adopted by such bodies if necessary or appropriate to protect the rights created by the Securities Acts. *Id.;* 15 U.S.C. § 78s(c) (1982). The SEC has explicitly approved the NYSE and NASD arbitration rules and procedures at issue in this case. *McMahon,* 107 S.Ct. at 2341. Because Congress has committed to the SEC the task of ensuring that the federal rights established by the Securities Acts are not compromised by inadequate arbitration procedures, we are bound by the Commission's determination that the procedures at issue here are satisfactory. [Citation.] Any contrary holding would frustrate this carefully crafted federal regulatory scheme. [¶] Our conclusion is not affected by the Cohens' contention that the arbitration agreement is part of a contract of adhesion. We have previously held that state law adhesion contract principles may not be invoked to bar arbitrability of disputes under the Arbitration Act. *Bayma,*

[*Bayma* v. *Smith Barney, Harris Upham & Co.* (9th Cir. 1986)] 784 F.2d [1023] at 1024-25. We reaffirm that holding today." (*Cohen* v. *Wedbush, Noble, Cooke, Inc., supra,* 841 F.2d at pp. 285-286, fn. omitted.)

██ We agree with the *Cohen* analysis. Under *Cohen's* interpretation of *Shearson/American Express, Inc.* v. *McMahon* (1987) 482 U.S. 220, [96 L.Ed.2d 185, 107 S.Ct. 2332], the SEC is responsible for ensuring the fairness of arbitration proceedings under the NYSE and NASD. To the extent federal or state judges applying federal law may have previously been permitted to entertain challenges raising institutional bias of these arbitration panels (as in *Siedman, supra,* for instance), such challenges are no longer permitted. We sustain the superior court's order here.

We have not addressed petitioner's assertions that there was fraud in the inducement to enter the arbitration agreements and that real parties were barred from equitable relief by their unclean hands. Though petitioner argues these issues extensively in her petition, she does so as if she were arguing them to the trier of fact, not to an appellate court. Petitioner fails to even advise this court of the considerable evidence contrary to her positions. Thus, she fails to demonstrate how the trial court abused its discretion and why its rulings on any factual disputes were not supported by substantial evidence. We reject her claims.

The alternative writ is discharged and the petition for peremptory writ is denied.

White, P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied July 21, 1988, and petitioner's application for review by the Supreme Court was denied September 1, 1988.