[No. A035419. First Dist., Div. Four. June 30, 1987.]

THE ENERGY GROUP, INC., Plaintiff and Appellant, v.
ROBERT F. LIDDINGTON et al., Defendants and Respondents.

**COUNSEL**

Steven P. Krakowsky and Dolman, Wolfe & Linden for Plaintiff and Appellant.

Kathleen Courts and White, Courts & Mitchell for Defendants and Respondents.

## OPINION

### SABRAW, J.—

The Energy Group, Inc. (TEG) appeals from an order which, in effect, denied its petition to compel arbitration of a dispute and instead stayed the arbitration until resolution of pending litigation. We first hold that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) has preempted Code of Civil Procedure section 1281.2, subdivision (c), to the extent it is used to stay arbitration under an agreement governed by the FAA. Second, we hold that the trial court should have granted the petition to compel arbitration Accordingly, we reverse.

### I. FACTS AND PROCEDURAL HISTORY

The present controversy arises out of a tax shelter program involving so-called "energy management systems." As part of the scheme, individuals would lease interests in such systems from American Energy Systems, Inc. (American Energy). American Energy has its principal place of business in Phoenix, Arizona. It claimed that each system cost it $80,000 and it assigned to the lessees its claim for investment tax credits based on that amount. Installation of the systems was the responsibility of the lessees who were to receive income from energy savings obtained by the "end users" of the systems.

On December 31, 1984, Robert and Katherine Liddington leased 1.6 energy management systems from American Energy.[1] The Liddingtons were told that they would receive tax savings and credits based on their investment in the systems.[2]

On the same day, the Liddingtons also entered into service contracts with United States Energy Management Systems, Inc. (U.S. Energy) in which the latter agreed to obtain "end-user" locations for the two energy management systems and to install them within 90 days. U.S. Energy has its principal place of business in Los Angeles. Among other things, the agreements provided that the Liddingtons would be paid a significant percentage of the energy savings produced by the systems and received by the end users. Paragraph 11 of the contract consisted of an agreement to arbitrate

---

[1] The Liddingtons entered into a joint venture with several other investors for the fractional interest they acquired in the second system.

[2] The questionable nature of the tax shelter scheme was evidenced as early as January 29, 1985, when the Liddingtons were notified by the District Director of the Internal Revenue Service that it was taking the position tax credits and deductions involving the scheme were not allowable.

contractual disputes before the American Arbitration Association (AAA).[3] Although paragraph 17 expressly provided that U.S. Energy could assign its "obligation" under the contract without the prior written consent of the Liddingtons, the contract made no mention of U.S. Energy's ability to assign its rights under the agreement.[4]

On March 7 and 13, 1985, U.S. Energy notified the Liddingtons that it had assigned their service contract to TEG, a corporation licensed as a contractor to perform heating, air conditioning and ventilation work. (TEG has its principal place of business in Alhambra, California.) The assignment apparently took place on January 21, 1985. By written agreement of that date, TEG agreed to assume U.S. Energy's obligations under 750 similar service agreements with investors in exchange for $1.25 million and assignment of U.S. Energy's rights under the service agreements. It was not until after the cross-complaint was served almost one year later that the Liddingtons' attorney first obtained a copy of the assignment agreement.

California First Bank (the Bank) provided financing for the Liddingtons' acquisition of the two energy management systems. The debt was evidenced with a promissory note executed by the Liddingtons. When the Liddingtons failed to make payments on the promissory note, the Bank filed a complaint against them. The Liddingtons, in turn, cross-complained against the Bank, U.S. Energy, TEG, and others. Among other things, the Liddingtons alleged that neither U.S. Energy nor TEG had ever installed the two energy management systems financed by the Bank.

Prior to answering the cross-complaint, TEG filed a petition to compel arbitration of the Liddingtons' pursuant to the arbitration clause in the U.S. Energy service contract, the FAA, and the rules of the American Arbitration Association. It also asked the court to stay the litigation pursuant to section 3 of the FAA[5] until the arbitration was completed. TEG argued that

[3] Paragraph 11 provided: "This Agreement was excuted [sic] and negotiated in the State of California, and the parties agree that they shall be deemed to have agreed to binding arbitration in the State of California, with respect to the entire subject matter of any and all dispute [sic] relating to or arising under this Agreement. Any such arbitration shall be pursuant to the rules of the American Arbitration Association in California. In all arbitrations, judgment upon the arbitration award may be entered in any court having jurisdiction thereof. The parties specifically designate the City and County of Los Angeles, State of California, as the forum for, and as properly having jurisdiction for such purposes."

[4] Paragraph 17 stated: "The Service Company shall be permitted to assign its obligation herein without the prior written consent of the Lessee."

[5] Section 3 of the FAA provides that if a lawsuit is brought concerning the merits of a dispute covered by an arbitration agreement, "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until

the dispute was subject to the FAA because the contract involved interstate commerce. It argued that recent decisions of the United States Supreme Court had made it clear the FAA preempted the field of arbitration with respect to agreements such as the U.S. Energy contract, thereby mandating that its petition to compel arbitration be granted. (Citing, inter alia, *Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Moses H. Cone Hospital* v. *Mercury Constr. Corp.* (1983) 460 U.S. 1 [74 L.Ed.2d 765, 103 S.Ct. 927].)

The Liddingtons asserted various reasons why TEG's petition should not be granted. They also argued that the question of whether arbitration should be ordered was subject to Code of Civil Procedure section 1281.2.[6]

Although the trial court did not explicitly deny TEG's petition to compel arbitration, it stayed the arbitration proceeding pending resolution of the litigation. Apparently applying California law, the court first found that there had been no waiver of the right to arbitrate, that the arbitration clause was not unconscionable and that there was a valid assignment of the contract. It also found that the contract involved interstate commerce and ruled, therefore, that it was governed by the FAA. However, because the contract contained a choice of laws clause specifying that it would be construed under the laws of California, the court also ruled that Code of Civil Procedure section 1281.2, subdivision (c), was applicable to the proceedings. Finding that TEG was involved with third parties in the proceeding before it, that the proceedings involved common issue of law and fact, and

such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

[6] Code of Civil Procedure section 1281.2 provides in relevant part: "On the petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or

(b) Grounds exist for the revocation of the agreement.

(c) A party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact . . .

"If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action . . . between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action . . . ; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the court action . . . ."

that the possibility of conflicting rulings existed, the court decided that a stay of the arbitration was justified under California law.

TEG filed a timely notice of appeal from the stay order.[7]

## II. ANALYSIS

As it did below, TEG continues to assert that Code of Civil Procedure section 1281.2 is preempted to the extent it is used to stay arbitration of a dispute governed by the FAA. Based upon relevant United States Supreme Court cases, we agree.

*Moses H. Cone Hospital* v. *Mercury Constr. Corp., supra,* 460 U.S. 1, involved a dispute between a hospital and a general contractor over the contractor's claims for costs incurred due to delay in the construction of a building. The primary issue on appeal was the propriety of a federal district court order staying the contractor's federal court petition for an order compelling arbitration pending resolution of a concurrent state court suit brought by the hospital. In holding that the order was erroneous, a majority of the Supreme Court stated that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." (*Id.,* at 24 [74 L.Ed.2d at p. 785].)

*Cone Hospital* was followed by *Southland Corp.* v. *Keating, supra,* 465 U.S. 1, where a number of 7-Eleven convenience store franchisees brought individual and class actions against the franchisor, Southland, for fraud and breach of contract arising out of the franchise relationship. After the actions were consolidated, Southland sought to compel individual arbitrations under the auspices of the American Arbitration Association pursuant to arbitration clauses in the franchise agreements. The trial court concluded that the FAA preempted section 31512 of the California Franchise Investment Law (Corp. Code, § 31512) and granted the request to compel arbitration.

On appeal, the California Supreme Court held that the FAA did not preempt the field of arbitration where California's regulatory scheme voided franchisor efforts to require franchisees to waive their constitutional rights to trial by jury. (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 602-603 [183 Cal.Rptr. 360, 645 P.2d 1192].)

---

[7]An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) As we later explain, we chose to treat the court's order as, in effect, denying the petition to compel arbitration, thereby rendering it an appealable order.

A majority of the United States Supreme Court disagreed. Citing *Cone Hospital*, the court reiterated that the FAA had preempted the field: "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements [governed by the FAA]." (*Southland Corp.* v. *Keating, supra,* 465 U.S. 1, 16 [79 L.Ed.2d 1, 15].) The court held, therefore, that section 31512 of the California Franchise Investment Law violated the supremacy clause to the extent that it was used to bar the enforcement of arbitration agreements within the jurisdiction of the FAA. (*Ibid.*)

Finally, while this appeal was pending, the Supreme Court reiterated that the FAA preempts state legislation which treats the validity, revocability and enforcement of FAA-governed arbitration agreements differently than other contracts. (*Perry* v. *Thomas* (June 15, 1987) 482 U.S. __ [96 L.Ed.2d 426, 107 S.Ct. 2520].)

 In this case, the trial court found that the U.S. Energy service agreement executed by the Liddingtons unquestionably involved interstate commerce and was governed by the FAA. As a result, it correctly ruled that the arbitration clause in the agreement was governed by the FAA. The question which remains, however, is whether the FAA bars a California court from utilizing Code of Civil Procedure section 1281.2 to merely stay arbitration pending the outcome of litigation between the parties.

The federal courts and state courts have been in some disagreement as to whether federal law entirely displaces state law for purposes of evaluating defenses to enforcement of an arbitration agreement.[8] A number of federal courts have stated that federal law governs virtually all questions of interpretation, validity, and enforcement of arbitration agreements. (E.g., *Coenen* v. *R. W. Pressprich & Co.* (2d. Cir. 1972) 453 F.2d 1209, cert. den. 406 U.S. 949 [32 L.Ed.2d 337, 92 S.Ct. 2045]; *Bayma* v. *Smith Barney, Harris Upham and Co., Inc.* (9th Cir. 1986) 784 F.2d 1023, 1025.) Several California courts have accepted this view. (*Tonetti* v. *Shirley* (1985) 173 Cal.App.3d 1144, 1148 [219 Cal.Rptr. 616] [unconscionability issue decided by reviewing federal cases which held NYSE arbitration rules and procedures to be fair and equitable]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637-639 [223 Cal.Rptr. 838][state law adhesion contract principles are inapplicable to the enforcement of arbitration clauses in an agreement governed by the FAA]; *Thorup* v. *Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228, 233-234 [225 Cal.Rptr. 521] [defenses to

---

[8]Section 2 of the FAA provides for the validity and enforceability of written arbitration clauses "save upon such grounds as exist at law or in equity *for the revocation of any contract.*" (9 U.S.C. § 2, italics added.)

enforcement of arbitration agreement such as waiver and delay are determined under federal law].)

By contrast, some state courts have held that state contract law principles should be applied in assessing a claim that an arbitration agreement should not be enforced on unconscionability grounds. (E.g., *Pittsfield Weaving Co.* v. *Grove Textiles, Inc.* (1981) 121 N.H. 344 [430 A.2d 638, 640] [because unconscionability concept applies to all contracts and not just arbitration agreements, state contract law provided the applicable rule].) At least one California court has held that state contract law principles should be applied in making an initial determination of whether a valid agreement to arbitrate exists. (*Chan* v. *Drexel Burnham Lambert, Inc., supra,* 178 Cal.App.3d 632, 638-639 [California law applied in holding that the arbitration clause in question had not been incorporated into the contract, thereby placing the matter outside the FAA].)

The pre-*Perry* decisions of the United States Supreme Court concerning the scope and application of the FAA were by no means clear on this point. On the one hand, the Supreme Court has indicated that the FAA was intended to prevent state legislation from undercutting the enforceability of arbitration agreements which involve interstate commerce. (*Southland Corp.* v. *Keating, supra,* 465 U.S. 1, 16 [79 L.Ed.2d 1, 15-16].) On the other hand, the high court has also suggested that general principles of state contract law applicable to all contracts and not only to arbitration agreements could be used in deciding contract law issues involved in alleged arbitration agreements. (*Id.,* at 16-17, fn. 11 [79 L.Ed.2d at pp. 15-16].) ■ However, through dictum in *Perry,* the Supreme Court has now made it clear that so long as the state contract law principles in question have general application to all contracts and are not rules which apply solely to arbitration agreements, state law provides the relevant rule of law with respect to issues such as formation and enforcement of an arbitration agreement.[9] (*Perry* v. *Thomas, supra,* 482 U.S. __, __, fn. 9 [96 L.Ed.2d 426,

___

[9]The court stated: "We also decline to address Thomas' claim that the arbitration agreement in this case constitutes an unconscionable, unenforceable contract of adhesion. This issue was not decided below, see nn. 4 and 6, *supra,* and may likewise be considered on remand.

"We note, however, the choice-of-law issue that arises when defenses such as Thomas' so-called 'standing' and unconscionability arguments are asserted. In instances such as these, the test of § 2 provides the touchstone for choosing between state law principles and the principles of federal common law envisioned by the passage of that statute: An agreement to arbitrate is valid, irrevocable, and enforceable, *as a matter of federal law,* see *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* 460 U.S. 1, 24 (1983), 'save upon such grounds as exist at law or in equity for the revocation of *any* contract.' 9 U.S.C. § 2 (italics added). Thus state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2. See *Prima Paint, supra,* at 404;

437, 107 S.Ct. 2520].) Of course, decisions on these issues involving contracts governed by the FAA must be made " 'with a healthy regard for the federal policy favoring arbitration.' " (*Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626[87 L.Ed.2d 444, 455, 105 S.Ct. 3346, 3354], quoting *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp., supra,* 460 U.S. 1, 24-25[74 L.Ed.2d 765, 785].)

 Although section 3 of the FAA authorizes a court to stay litigation pending the completion of related arbitration proceedings, there is no provision in federal law analogous to Code of Civil Procedure section 1281.2 which authorizes a court to stay an arbitration proceeding pending resolution of related litigation. The use of Code of Civil Procedure 1281.2 to stay arbitration of a dispute pending completion of court litigation does not involve the question of whether a contract has been formed. It does not render a contract void or subject to rescission; the contract remains valid. Moreover, by its own terms, section 1281.2 applies only to contracts subject to arbitration. In our view, this is not a situation in which application of state law can be justified under the *Perry* dictum (fn. 9, *ante)* which allows use of substantive state contract law that is generally applicable to all contracts. We hold, therefore, that section 1281.2 has been preempted by the FAA if it is used in order to avoid or delay arbitration of a contract dispute governed by the FAA. (Cf. *Dean Witter Reynolds Inc.* v. *Byrd* (1985) 470 U.S. 213 [84 L.Ed.2d 158, 105 S.Ct. 1238].)[10]

The Liddingtons suggest that, because the trial court's order did not deny TEG's petition to compel, it does not run afoul of the FAA. We disagree. One obvious purpose behind TEG's request to compel arbitration was to allow it to resolve the Liddingtons' claims against it without incurring the expense of litigating those same claims. In these circumstances, there is no meaningful distinction between the court's action and an order denying the petition. Although the trial court did not expressly deny the petition, by staying the arbitration pending resolution of the litigation, the court caused

*Southland Corp.* v. *Keating,* 465 U.S. at 16-17, n. 11. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot."

[10]In *Dean Witter,* the Supreme Court held that a trial court ruling on a motion to compel arbitration of a dispute governed by the FAA was *required* to grant the petition even if intertwined arbitrable and nonarbitrable claims involved common questions of law and fact which might result in collateral estoppel problems and create redundant efforts to litigate the same factual issues twice. (*Dean Witter Reynolds Inc.* v. *Byrd, supra,* 470 U.S. 213 [84 L.Ed.2d 158, 162-167, 105 S.Ct. 1238, 1240-1244].) In effect, the high court's decision was grounded in the fact that the FAA contains no grant of authority similar to that found in Code of Civil Procedure section 1281.2.

many of the same effects which would have occurred if it had denied the petition. We hold, therefore, that such an order should be treated the same as an order denying a petition to compel arbitration.

The order staying the arbitration proceedings pending resolution of the litigation is reversed.

Anderson, P. J., and Poché, J., concurred.