[No. D025845. Fourth Dist., Div. One. Jan. 10, 1997.]

CITY OF VISTA, Plaintiff and Respondent, v.
SUTRO & CO. et al., Defendants and Appellants.

402

### COUNSEL

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Gilbert R. Serota, Danny Chou, Gibson, Dunn & Crutcher, J. Anthony Sinclitico III, Alan B. Lawhead and Holli H. Payne for Defendants and Appellants.

Duckor, Spradling & Metzger, Scott L. Metzger, Leslie S. Akins, Jessica M. Amgwerd, Milberg, Weiss, Bershad, Specthrie & Lerach, Alan Schulman, Jan Adler and Pamela Parker for Plaintiff and Respondent.

### OPINION

**KREMER, P. J.**—Defendants Sutro & Co., Michael Axelrod, Gabriel Wisdom, Kevin Hoyle (together Sutro), and Prudential Securities, Inc., appeal an order denying their petitions to compel plaintiff City of Vista to arbitrate its claims against defendants and stay trial court proceedings pending arbitration. We reverse the order.

## I

### INTRODUCTION

This case involves the attempt by two investment brokerage firms to compel Vista to arbitrate its claims against them under client agreements executed on the city's behalf by its finance director Frank Rowlen. Opposing the defense petitions to compel arbitration, Vista claimed Rowlen lacked authority to sign any agreement requiring the city to arbitrate disputes against the brokerage firms. Agreeing with Vista, the superior court denied the motions to compel arbitration. We conclude the court erred in finding Rowlen lacked authority to enter into arbitration agreements on Vista's behalf.

## II

### FACTS

For purposes of determining the propriety of the order denying defendants' petitions to compel arbitration, we state the facts in the light most

favorable to Vista. (*Engineers & Architects Assn.* v. *Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)

From 1982 until March 1995 Frank Rowlen was Vista's treasurer and director of finance.

In October 1988 Vista's city council adopted Resolution No. 88-245 authorizing certain Vista officials, including its director of finance, to perform actions necessary for proper administration of the city's funds.[1] By addendum to Resolution No. 88-245, Vista's city clerk certified "the signatures and titles of the persons authorized and empowered to act on behalf of the City of Vista" included Rowlen as director of finance.

In April 1989 Rowlen opened an account with Sutro by signing a client agreement (the Sutro client agreement) containing an arbitration provision.[2]

In March 1993 Rowlen opened two accounts with Prudential by signing two client opening account agreements containing arbitration provisions.[3]

In January 1994 Rowlen opened another account with Prudential by signing another client opening account agreement containing an arbitration

---

[1]Resolution No. 88-245 provided:

"WHEREAS, active management of the City's Investment Portfolio requires periodic liquidation of investment positions at profit to City operations; and

"WHEREAS, in order to complete certain investment transactions in the most expeditious manner, investment firms dealing with the City's Portfolio require written authorization that individuals filling certain positions within the City are authorized to perform actions necessary to properly administer the funds of the City.

"Now, THEREFORE, BE IT RESOLVED by the City of Vista, California, that anyone [*sic*] of the individuals filling the following positions within the City are [*sic*] hereby authorized to sign warrants, transfer or invest funds, and sell, assign and transfer securities, and take other actions deemed necessary to properly administer the funds of the City of Vista, California:

MAYOR
CITY MANAGER
DIRECTOR OF FINANCE
ACCOUNTING MANAGER
DEPUTY CITY TREASURER"

[2]Later Sutro also entered into an additional client agreement containing an arbitration clause with Security Pacific Bank as custodian for the benefit of Vista signed by the bank's representative Schafer. Based upon evidence that Vista had not adopted any resolution granting non-city employee Schafer authority to sign the additional client agreement on Vista's behalf, the superior court declined to enforce that agreement's arbitration clause against the city. Since Sutro's appellate beliefs do not attack the court's finding Schafer lacked authority to bind Vista to arbitration, we need not further address such issue.

[3]Rowlen submitted a declaration asserting he signed those agreements on Vista's behalf to open accounts for the city.

provision.[4] Prudential also entered into a "Delivery Versus Payment" agreement containing an arbitration clause with Vista's joint powers financing authority signed by Rowlen as the city's treasurer.

In June 1994 Prudential opened account No. HWP-843497 by entering into another "Delivery Versus Payment" agreement (the Prudential client agreement) containing an arbitration clause with Vista signed by Rowlen as the city's director of finance.

## III

### SUPERIOR COURT PROCEEDINGS

In November 1995 Vista sued defendants for intentional misrepresentation and fraudulent concealment; constructive fraud; breach of fiduciary duty; negligent misrepresentation; Corporations Code violations; professional negligence; breach of the implied covenant of good faith and fair dealing; money had and received; and ultra vires transactions.

In January 1996 defendants petitioned to compel arbitration and stay the court proceedings. Opposing defendants' petitions, Vista claimed there was no binding arbitration agreement between the city and defendants. Vista asserted Resolution No. 88-245 did not authorize Rowlen to bind the city to arbitration; Rowlen's acts were unauthorized and ultra vires as exceeding his duties defined by statute and the city's municipal code; and Vista never intended to waive its right to jury trial.

In February and March 1996 defendants' petitions to compel arbitration came for hearing. The court denied defendants' petitions on the ground Rowlen lacked express authorization to enter into any contract containing an arbitration clause.[5] The court also found Sutro failed to authenticate its undated client agreement and failed to establish Rowlen acted on the city's behalf in executing such agreement.

Defendants appeal the order denying their petitions to compel arbitration.

## IV

### DISCUSSION

This appeal does not present the issue whether the allegations of Vista's complaint came within the scope of the proffered arbitration agreements.

---

[4] Rowlen's declaration asserted he signed the agreement on Vista's behalf to open an account for the city's joint powers financing authority.

[5] Specifically, the superior court found "neither Resolution 88-245, Government Code §§ 41001-41005, nor Vista Municipal Code § 2.24.070 provided Frank Rowlen with the express authority to enter into a contract containing an arbitration provision."

Instead, this case presents the issue whether Vista and defendants in fact agreed to arbitrate. More precisely, the matter before us is whether in executing agreements with defendants containing arbitration clauses Rowlen was acting within the scope of his authority as Vista's agent so as to bind the city to those arbitration provisions.

## A

### STANDARD OF REVIEW

"The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.] There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate. [Citation.]" (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* 30 Cal.App.4th at p. 653.) Whether the parties formed a valid agreement to arbitrate is determined under general California contract law. (*Rice* v. *Dean Witter Reynolds, Inc.* (1991) 235 Cal.App.3d 1016, 1023 [1 Cal.Rptr.2d 265]; *Chan* v. *Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 637 [223 Cal.Rptr. 838].) Hence, when ruling on a petition to compel arbitration, the superior court may consider evidence on factual issues such as contract formation bearing on the threshold issue of arbitrability. (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* at p. 653.) A decision on such issues with respect to a contract governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) must be made with due regard to the federal policy favoring arbitration. (*The Energy Group, Inc.* v. *Liddington* (1987) 192 Cal.App.3d 1520, 1527-1528 [238 Cal.Rptr. 202].) On appeal we must review the court's factual ruling on arbitrability under the substantial evidence test. (*Engineers & Architects Assn.* v. *Community Development Dept., supra,* at p. 653.)[6]

As we shall explain, this record lacks substantial evidence to support the conclusion no arbitration agreement was formed under principles of general California contract law. Instead, the record compels a contrary conclusion, to wit, that Rowlen as Vista's authorized agent entered into arbitration agreements on the city's behalf.

---

[6]Federal courts apply de novo review when determining whether a valid agreement to arbitrate exists under general state contract law principles on issues such as contract formation. (*Wagner* v. *Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F.3d 1046; *Mago* v. *Shearson Lehman Hutton Inc.* (9th Cir. 1992) 956 F.2d 932, 934.)

B

ANALYSIS

1

*The Law*

■ "It has long been recognized that a city may agree to arbitrate any matter which could be the subject of civil suit. [Citation.]" (*Taylor* v. *Crane* (1979) 24 Cal.3d 442, 451 [155 Cal.Rptr. 695, 595 P.2d 129], citing *Cary* v. *Long* (1919) 181 Cal. 443, 448 [184 P. 857]; cf. *Viola, Inc.* v. *Santa Barbara High Sch. Dist.* (1969) 276 Cal.App.2d 425, 427-428 [80 Cal.Rptr. 784].) Implicit in a city's power to contract is the power to agree to binding arbitration. (*Cary* v. *Long*, *supra*, at pp. 447-448; *Viola, Inc.* v. *Santa Barbara High Sch. Dist.*, *supra*, at pp. 427-428.) Further, a municipal official duly authorized to enter into contracts on the city's behalf has implicit power to agree to arbitration. (*Community College Dist. No. 508* v. *Westcap Government Securities, Inc.* (N.D.Ill. 1994) 1994 WL 530849; *City of Hartford* v. *American Arbitration Assn.* (1978) 174 Conn. 472, 474, 478-480 [391 A.2d 137, 139-141].)[7]

2

*Resolution No. 88-245*

■ In concluding Resolution No. 88-245 did not provide Rowlen with express authority to enter into a contract containing an arbitration provision, the superior court acknowledged it was "true to some extent" that such resolution contemplated Rowlen would execute some written agreement in order to open a brokerage account. However, the court stated it did not necessarily follow that such authorization to establish a brokerage account included the authority to enter into a binding arbitration agreement.

---

[7]Contrary to Vista's contention, no different legal analysis is imported by the mere fact *Taylor* v. *Crane*, *supra*, 24 Cal.3d 442, involved a chartered city while Vista is a general law city with assertedly more limited powers. "A city charter is construed to permit the exercise of all powers not expressly limited by the charter or by superior state or federal law. [Citation.] Restrictions on a charter city's powers may not be implied. [Citation.]" (*Id.* at pp. 450-451.) A general law city ". . . 'is limited in the exercise of its powers by the constitution and general laws. It has only the powers expressly conferred and *such as are necessarily incident to those expressly granted or essential to the declared objects and purposes of the municipal corporation.*' [Citation.]" (*Eastern Mun. Water Dist.* v. *City of Moreno Valley* (1994) 31 Cal.App.4th 24, 28 [36 Cal.Rptr.2d 823], italics added.) Further, Government Code section 37103 provides that a city's legislative body may contract with an experienced firm for special services in financial matters.

Defendants contend Vista may not disclaim Rowlen's authority to bind the city to arbitration since he was acting under authority granted by Resolution No. 88-245. Specifically, defendants assert that by expressly granting Rowlen power to "transfer or invest funds, and sell, assign and transfer securities, and take other actions deemed necessary to properly administer the funds of the City of Vista," the resolution necessarily gave Rowlen authority to perform the incidental act of entering on the city's behalf client agreements with investment brokerage firms. Defendants also assert the authority expressly granted to Rowlen to enter into the client agreements on Vista's behalf necessarily included power to bind the city to the arbitration provisions in those agreements. Asserting in response that Resolution No. 88-245 did not specifically refer to requirements for opening a securities account or authorize any municipal officer to enter into an agreement binding the city to arbitration, Vista contends the superior court properly ruled Rowlen lacked authority to enter into client agreements on the city's behalf with defendant investment brokerage firms and thus no valid arbitration agreement was formed between defendants and the city.

■ Interpretation of Resolution No. 88-245 is a question of law. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].) In interpreting the resolution, we are bound to give effect to its language's usual and ordinary meaning. (*California Teachers Assn.* v. *San Diego Community College Dist.*, *supra*, at p. 698.) Before considering extrinsic matter, we must look first at the resolution's words to determine the legislative intent. (*Ibid.*) If the resolution's language is unambiguous, we need not consider extrinsic evidence. (*Ibid.*)

■ We conclude Resolution No. 88-245 unambiguously authorized Rowlen on Vista's behalf to enter into the client agreements with defendant brokerages. The resolution specifically found that for purposes of expeditious completion of certain investment transactions, investment firms dealing with Vista's portfolio required written authorization of city officials' authority to perform actions necessary for proper administration of the city's funds. The resolution then expressly authorized director of finance Rowlen to "transfer or invest funds, and sell, assign and transfer securities, and take other actions deemed necessary to properly administer" the city's funds. Necessarily included in such express authority was the power to perform acts incidental to investing city funds such as opening brokerage accounts by executing client agreements. (*Morrison Homes Corp.* v. *City of Pleasanton*

(1976) 58 Cal.App.3d 724, 734 [130 Cal.Rptr. 196];[8] *San Bernardino Fire & Police Protective League* v. *City of San Bernardino* (1962) 199 Cal.App.2d 401, 410 [18 Cal.Rptr. 757]; *Manteca Union High School Dist.* v. *City of Stockton* (1961) 197 Cal.App.2d 750, 755 [17 Cal.Rptr. 559].) Implicit in that express authority to contract with investment firms was the power to agree to arbitration provisions. (*Taylor* v. *Crane, supra*, 24 Cal.3d at p. 451; *Cary* v. *Long, supra*, 181 Cal. at pp. 447-448; cf. *Viola, Inc.* v. *Santa Barbara High Sch. Dist., supra*, 276 Cal.App.2d at pp. 427-428; *Community College Dist.* v. *Westcap Government Securities, Inc., supra*, 1994 WL 530849; *City of Hartford* v. *American Arbitration Association, supra*, 174 Conn. at pp. 474, 478-480 [391 A.2d at pp. 139-141].) The resolution's mere silence on the matter of arbitration does not indicate that authority to agree to arbitration was not conferred on Rowlen. (Cf. *Eastern Mun. Water Dist.* v. *City of Moreno Valley, supra*, 31 Cal.App.4th at pp. 30-31.)[9]

In sum, incident to its power to contract, Vista had the power to submit to arbitration. Upon expressly delegating to Rowlen the power to contract with regard to investment of the city's funds, Vista's Resolution No. 88-245 also implicitly authorized him to contract for arbitration. Moreover, as we shall explain, Vista has made no showing to the contrary.

### 3

### *Inadequate Showing That Rowlen Lacked Authority*

The superior court found neither Government Code section 41001 et seq.[10] nor section 2.24.070 of Vista's municipal code provided Rowlen with express authority to enter into a contract containing an arbitration provision. Asserting the language of those statutory and municipal code provisions

---

[8] ' "[A] city has authority to enter into contracts which enable it to carry out its necessary functions, and this applies to powers expressly conferred upon a municipality and to powers implied by necessity. [Citation.]' [Citations.]" (*Morrison Homes Corp.* v. *City of Pleasanton, supra*, 58 Cal.App.3d at p. 734.)

[9] Since Resolution No. 88-245 was unambiguous, we may not consider Vista's officials' declarations to the extent they express those officials' motives or understandings with respect to interpretation of the resolution. (*California Teachers Assn.* v. *San Diego Community College Dist., supra*, 28 Cal.3d at pp. 698-700.)

[10] Government Code section 41001 et seq. describes the duties of a general law city's treasurer as receiving and keeping safely all money entering the treasury (§ 41001); complying with all laws involving deposit and security of public funds and handling trust funds in the treasurer's possession (§ 41002); not paying out money except on warrants signed by legally designated persons (§ 41003); regularly submitting to the county clerk a written report and accounting of receipts, disbursements and fund balances (§ 41004); and performing such duties relating to collecting city taxes and license fees as are prescribed by ordinance (§ 41005).

defining the limited powers of Vista and its officers must be strictly construed (*City of Los Angeles* v. *Keck* (1971) 14 Cal.App.3d 920, 926 [92 Cal.Rptr. 599]), Vista contends nothing in those enactments authorized Rowlen to bind the city to an arbitration agreement. However, after describing various duties and responsibilities of the city's director of finance, section 2.24.070 of Vista's municipal code expressly authorized the finance director to "[p]erform such other functions as the city manager may specify *or as may be prescribed by action of the council.*" (*Id.* at subd. R, italics added.)

Further, Vista's reliance on *W.M. Schlosser Co.* v. *School Bd. of Fairfax Cty.* (4th Cir. 1992) 980 F.2d 253 is misplaced. Citing *Schlosser*, the superior court stated that any authority to Rowlen to bind Vista to arbitration could not be implied but instead required an express grant by statute or resolution, a circumstance assertedly not present here. However, *Schlosser* is distinguishable as involving Virginia statutory law expressly prohibiting a school board from arbitrating a contract dispute. (*Id.* at pp. 256-258.) Unlike the situation in *Schlosser*, there was no legal impediment to Vista arbitrating this dispute. (*Taylor* v. *Crane*, *supra*, 24 Cal.3d at pp. 450-451; *Viola, Inc.* v. *Santa Barbara High Sch. Dist.*, *supra*, 276 Cal.App.2d at p. 428.)

Also without merit is Vista's contention that enforcement of the arbitration agreements would effectively constitute a waiver of its right to jury trial. A predispute arbitration agreement does not raise any constitutional issue involving waiver of jury trial. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 703, 713-714 [131 Cal.Rptr. 882, 552 P.2d 1178].)

4

*Authentication of Sutro's Client Agreement*

As noted, the superior court found Sutro did not authenticate its undated client agreement and did not establish Rowlen acted on the city's behalf in executing such agreement. Attacking the court's finding, Sutro contends ·it properly established the authenticity of its client agreement through the declarations of Rowlen, its employee Axelrod, and its broker/ branch manager Hoyle. According to Sutro, those declarations established that Rowlen executed the client agreement on Vista's behalf in order to open a brokerage account at Sutro for the city.

Preliminarily, we note Vista's respondent's brief does not assert lack of authentication of Sutro's client agreement as a ground to uphold the court's

denial of Sutro's petition to compel arbitration. Neither has Vista presented any case law to support the court's ruling on authentication or to challenge Sutro's legal authority. However, in any event, even if Vista were seeking affirmance on the ground of lack of authentication of the Sutro client agreement, we would conclude the court erred in finding such agreement was not properly authenticated.

Evidence Code section 1400 provides: "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." Evidence Code section 1413 provides: "A writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness." Further, Evidence Code section 1414, subdivision (b), provides a writing may be authenticated by evidence "[t]he writing has been acted upon as authentic by the party against whom it is offered." ■ "[T]he objection that a document has not been authenticated does not go to the truth of the contents of the document, but rather to the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent claims it to be. [Citations.]" (*Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310, 318 [118 Cal.Rptr. 596].)

■ Rowlen's declaration asserted he executed the Sutro client agreement on Vista's behalf to open the investment account with Sutro; at that time he was aware of the agreement's arbitration clause; and his entry into the Sutro client agreement on Vista's behalf was part of his authority to take all steps necessary to make investments for the city through brokerage firms. (See Evid. Code, § 1413.) Consistent with Rowlen's assertion he executed the Sutro client agreement on Vista's behalf was the inclusion of the city's taxpayer identification number on the face of the agreement. Rowlen's assertion was also consistent with the addendum to Vista's Resolution No. 88-245 containing the city clerk's certification of Rowlen's signature plus his authority and power to act on the city's behalf.

Further, the declaration of Sutro employee Axelrod asserted Sutro prohibited him from doing investment business without obtaining satisfactory documentation containing the names of persons authorized to transact business on behalf of a client entity; he gave Rowlen a form for Vista to use to identify such persons; Rowlen delivered to him Vista's Resolution No. 88-245 and its addendum; he relied on those resolutions as authorizing Rowlen to act on Vista's behalf; Rowlen signed the client agreement on Vista's behalf for the purpose of opening the city's account at Sutro; Sutro

would not have transacted business with Vista without the client agreement; Sutro kept the client agreement as part of Vista's file; and in his dealings with Vista, the city never questioned Rowlen's authority to deal with Sutro. (See Evid. Code, § 1414, subd. (b).)

Moreover, in verifying Sutro's petition to compel arbitration, its broker/branch manager Hoyle asserted that in April 1989 Vista established a brokerage account with Sutro; Vista executed and delivered to Sutro a client agreement signed by Rowlen in Vista's name; Vista delivered to Sutro its Resolution No. 88-245 with addendum; Vista never notified Sutro of any revocation of its client agreement or resolution authorizing Rowlen to act on the city's behalf; and Vista never notified Sutro that Rowlen lacked authority to bind and obligate Vista to the client agreement. (See Evid. Code, § 1414, subd. (b).)

In sum, the effectively undisputed evidence submitted by Sutro was adequate to authenticate the client agreement. The opposition declaration of Vista's finance manager Nielsen simply asserting that the city's investment files contained no "evidence" of any arbitration agreement between Vista and Sutro or any other broker/dealer was insufficient to overcome the facts established by Sutro's evidence. On this record the superior court should have concluded the Sutro client agreement was properly authenticated.

5

*Estoppel to Deny Validity of Arbitration Agreement*

In denying defendants' petitions to compel arbitration, the superior court necessarily rejected without express findings the defense contention Vista should be estopped to oppose arbitration. Defendants contend that even if Rowlen lacked actual authority to bind Vista to arbitration, the city should be estopped to deny the validity of the agreements entered into by its ostensible agent Rowlen since the city conducted transactions under those agreements to its financial benefit and did not dispute Rowlen's authority until January 1996 when denying the existence of any valid binding agreement to arbitrate. However, in light of our conclusion the record compels a conclusion that on Vista's behalf Rowlen as its authorized agent entered into agreements with defendants containing arbitration provisions, we need not reach the issue whether Vista should be estopped to deny the validity of those agreements.

## DISPOSITION

The order is reversed. Appellants shall have costs on appeal.

Huffman, J., and Haller, J., concurred.